UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRACY ROBBINS, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>ANDREW SAUL, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>Defendant ) | CAUSE NO. 3:19-CV-1178 RLM |

OPINION AND ORDER

Tracy Robbins seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on November 19, and now reverses the Commissioner's decision and remands for further proceedings.

Ms. Robbins alleges disability due to multiple physical and mental impairments. She was 50 years old at the alleged onset of disability, had a high school education with some college, and worked as a child daycare center worker, nurse assistant, and hospital cleaner before breaking her left wrist in a March 2016 fall. The fracture was set and healed, but pain persisted.

Dr. David Cutcliffe (Ms. Robbins's treating orthopedic surgeon) discovered a large scapholunate ligament tear during a June 2016 arthroscopy. He performed a left carpal tunnel release and ligament reconstruction in July 2016, and Ms. Robbins reportedly did well until her pain increased in January 2017. Dr. Cutcliffe surgically repaired a triangular fibrocartilage complex tear in Ms. Robbins's left wrist in March 2017. After each procedure, Dr. Cutcliffe indicated that Ms. Robbins could return to work with "transitional duties" ranging from no use of the "affected extremity" to no lifting over two to five pounds and no repetitive motion. There's no record of any further treatment related to Ms. Robbins wrist after June 2017.

Ms. Robbins also suffers from, and has been treated for, chronic back and neck pain, headaches, asthma, depression, and anxiety. She was hospitalized in 2016 and 2017 for acute asthma exacerbations; in November 2016 for back pain, numbness, and tingling in her legs; and in March 2017 for depression and anxiety. In each case she was prescribed medication and discharged.

Ms. Robbins has been diagnosed with degenerative disc disease, but when a consulting physcian, Dr. Katherine Lisoni, compared x-rays taken in November 2016 with imaging performed between July 2013 and December 2014, she found no significant change, no nerve root compressive irregularities, and no neurologic dysfunction.

Ms. Robbins's applications for disability benefits were denied initially, upon reconsideration, and following an administrative hearing at which she was represented by counsel.

Based on the medical evidence and testimony from Ms. Robbins and vocational expert Clifford Brady, the ALJ found that:

- Ms. Robbins hadn't engaged in any substantial gainful activity since June 3, 2016 (the alleged onset date).

- Ms. Robbins had severe physical impairments (lumbar degenerative disc disease, carpal tunnel syndrome, obesity, and headaches), and non-severe mental impairments (anxiety and depression).

- Ms. Robbins' impairments alone and in combination didn't meet or equal the severity of a listed impairment.

- Ms. Robbins had the residual functional capacity to perform light work, with the following limitations. She could (1) never reach overhead bilaterally; (2) frequently handle, finger and feel with the left hand; (3) frequently climb ramps and stairs; (4) occasionally climb ladders, ropes, and scaffolds; (5) frequently balance, kneel, crouch and crawl, and occasionally stoop; and (6) bever have concentrated exposure to humidity or dust, odors, fumes, pulmonary irritants, extreme heat, extreme cold, and vibration.

Based on her residual functional capacity and the vocational expert's testimony, the ALJ concluded Ms. Robbins couldn't perform her past relevant work. But given her age, education, work experience, residual functional capacity, and the vocational expert's testimony, there were a significant number of jobs in the national economy that she could still perform, including: bench assembler; electronics worker; and routing clerk. The ALJ found that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles, and that his testimony about overhead reaching (which the Dictionary of Occupational Titles didn't cover) was "based upon his professional experience (testimony)."

The ALJ thus concluded that Ms. Robbins wasn't disabled within the meaning of the Act from the onset date through the date of his decision and denied her applications for benefits. When the Appeals Council denied Ms. Robbins' request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Robbins contends that the ALJ erred at Steps 2, 3, and 5 of the sequential evaluation used to determine disability, when he:

(1) "cherry-picked" evidence and overlooked objective abnormalities or difficulties in functioning;

(2) didn't address her "neck condition" and asthma and ignored evidence indicating that her anxiety and depression were severe at Step 2;

4

(3) didn't consider her impairments in combination at Step 3;

(4) didn't obtain an expert opinion on medical equivalence;

(5) incorrectly concluded that the impairment to her left wrist, in combination with her other impairments, didn't medically equal Listing 1.07 from March 22, 2016 to June 20, 2017;

(6) didn't accommodate all of her impairments in his residual functional ability finding, specifically her mental impairments, or identify any "reasonable restrictions (*e.g.*, time off task and noise and light exposure to accommodate Ms. Robbins's headaches);

(8) rejected treating medical opinions, specifically the opinions by Dr. Cutcliffe and Michelle Streb, N.P.;

(9) rejected Ms. Robbins's and her mother Diana Robbins's statements about the limiting effects of her symptom; and

(10) failed to incorporate all of Ms. Robbins's limitations into his hypothetical to the vocational expert at Step 5, and incorrectly concluded that she could perform work as an "electronics worker" which requires occasional exposure to toxic caustic chemicals, when the ALJ found that she could have "no concentrated exposure to...odors, fumes and pulmonary irritants."

The ALJ's decision is imperfect, but understandably so given the number of impairments asserted and the lack of objective medical evidence Ms. Robbins

5

submitted in support of her applications. Many of the errors Ms. Robbins assigns to his decision are unsupported by the record or arguably harmless, but the ALJ's failure to sufficiently address the severity of Ms. Robbins's impairments requires remand.

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). In determining disability, the ALJ must determine, among other things, whether Ms. Robbins had a medically determinable impairment or combination of impairments that was severe and met the duration requirement (Step 2), and whether her impairments alone or in combination met or exceeded the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. "[T]he possibility of several impairments combining to produce a severe impairment must be considered." SSR 85-28.

The ALJ addressed Ms. Robbins's impairments individually, but made no findings about the severity of Ms. Robbins's asthma at step 2, gave little or no consideration to the severity of her impairments when combined, and limited his step 3 analysis to her "severe impairments" (degenerative disc disease, carpal tunnel syndrome, obesity, and headaches). He concluded that:

> Pursuant to SSR 02-1p, the undersigned considered obesity as an aggravating factor to any other severe impairment, that in

combination would meet a listing.  However, the medical evidence of record does not indicate that the claimant's obesity contributes to any other severe impairment that would cause that impairment to meet a listing in 20 CFR Par[t] 404, Subpart P, Appendix 1.

(AR at 17).

The errors in the ALJ's analysis at steps 2 and 3 tainted his findings at steps 4 and 5 about Ms. Robbins's residual functional capacity and the type of work she was capable of performing. Reversal and remand is therefore warranted.

The court takes no position on whether the evidence as a whole is sufficient to support a finding of no disability. It simply concludes that the ALJ didn't build the required logical bridge between his findings and conclusion.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   December 16, 2020

/s/ Robert L. Miller, Jr.
Judge, United States District Court